# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO A. SOTELO, | Case No. 1:08-cv-01342-LJO-SKO |
| Plaintiff, | ORDER GRANTING DEFENDANT GREEN'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| T. BIRRING, et al., | (Doc. 153) |
| Defendants. | |

## I. Introduction

Plaintiff Roberto A. Sotelo ("Plaintiff"), a state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 10, 2008.[1] This action is now proceeding on Plaintiff's second amended complaint, filed March 22, 2012, against Defendant Barry J. Green ("Defendant") for acting with deliberate indifference to Plaintiff's medical needs, in violation of the Eighth Amendment of the United States Constitution.[2] The events at issue occurred at Pleasant Valley State Prison in Coalinga, California. Plaintiff, who has long suffered from severe, chronic back and neck pain, alleges that on June 3, 2010, Defendant refused to schedule surgery

---

[1] Counsel was appointed to represent Plaintiff on April 5, 2011. (Doc. 50.)

[2] Also named as defendants in the second amended complaint were Das, Birring, Diep, and Colemen. Defendant Das was dismissed on July 2, 2012, pursuant to the parties' stipulation, and Defendants Birring, Diep, and Coleman were dismissed on August 23, 2012, pursuant to the parties' stipulation, leaving Green as the only remaining named defendant. (Docs. 99, 102, 108, 109.) Plaintiff also named Does 1-25 as defendants and his attempt to amend to name John Chiang in place of a Doe defendant, filed on May 21, 2014, will be addressed once briefing is complete. (Doc. 156.) The Court notes Defendant's opposition was filed on June 2, 2014. (Doc. 164.)

for him or grant his request for a softer bed; and Defendant prescribed him only aspirin, telling Plaintiff that other doctors were weak and intimidated by inmates into prescribing whatever drugs the inmates sought. Plaintiff alleges that as a result of Defendant's actions, he suffered pain so excruciating that he was unable to function.

On April 23, 2014, Defendant filed a motion for summary judgment. After obtaining an extension of time, Plaintiff filed a timely opposition on May 21, 2014, and Defendant filed a timely reply on May 28, 2014.[3] Pursuant to order, Defendant's motion has been submitted upon the record without oral argument. Local Rule 230(g). For the reasons which follow, Defendant's motion for summary judgment is granted.

## II.     Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

---

[3] Plaintiff's request for judicial notice of his documentary evidence, filed concurrently with his opposition, is denied. (Doc. 159.) "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The parties' admissible evidence will be considered in determining whether there exist triable issues of fact precluding summary judgment, but judicial notice of either party's evidence is unnecessary and it exceeds the boundaries of what constitute facts properly subject to judicial notice. Fed. R. Evid. 201; *U.S. v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012).

**III.     Discussion**

    **A.     Facts**

Plaintiff was born on February 24, 1957, and he originally hurt his back in the early 1980s at approximately twenty-four or twenty-five years of age when he lifted a ninety-four pound bag of cement while working in construction. Plaintiff hurt his back again while lifting weights in prison in 1993.

On March 11, 2008, Plaintiff had a tele-medicine consultation with Dr. Babbitz, a neurosurgeon at UC Davis, regarding his by then chronic back pain. Plaintiff admitted to Dr. Babbitz that he was a dope fiend, but said that he would like to avoid being on narcotics. Plaintiff also informed Dr. Babbitz that he could walk a mile or so at the track. Dr. Babbitz diagnosed Plaintiff with degenerative disc disease and discussed the surgical options with Plaintiff. Dr. Babbitz explained that the success rate is about 60%, with success being defined as a reduction in pain and perhaps in the need for medication. Dr. Babbitz suggested an L5-S1 fusion, with the

caveat that Plaintiff mayhave adjacent segment disease down the road and need treatment at the L4-5 level.  After a lengthy discussion, Plaintiff informed Dr. Babbitz that he would like to weigh his options and continue with conservative management.

Over the next two years, Plaintiff was regularly seen by a variety of medical providers for his chronic lower back pain.  Surgery was discussed on both March 25, 2008, and May 7, 2008, but Plaintiff declined surgery.

Morphine was first prescribed for Plaintiff on October 29, 2008.

On November 9, 2009, Plaintiff was seen by medical staff and a decision was made to decrease his morphine prescription to one 30 mg. tablet, twice a day, eliminating a noon dosage that he had been receiving.  The morphine was in the extended release ("SR" or sustained release) form, which means that the medication is gradually released into the patient's body so that it remains at a more constant level throughout the day.  In contract to extended release medication, instant release medication usually takes effect within fifteen to thirty minutes of ingestion and the effects taper off more quickly than extended release.  Plaintiff agreed with this change to his prescribed dosage.

In May and June 2010, Plaintiff began submitting a series of no fewer than five sick-call slips alerting medical staff that his medications were about to run out, and that he needed to have his morphine renewed and the dosage increased.

Plaintiff was first seen by Defendant, a licensed physician's assistant, on June 3, 2010. Plaintiff complained of radiculopathy in both legs, but not at the same time; and he had no loss of bowel or bladder function, and no falls.  Plaintiff was sometimes able to walk a couple of laps around the track at the prison, a distance of half a mile.

Around this time, Plaintiff worked as a porter in the prison, a job that involved sweeping and mopping; and Plaintiff could perform normal daily activities such as standing up, shaving, using the bathroom, showering, and lifting objects up to approximately fifteen pounds, although Plaintiff was slow in standing up at times.

During his examination of Plaintiff, Defendant placed his hand on the top of Plaintiff's head while Plaintiff was standing and pushed Plaintiff's head down.  Defendant did this multiple

4

times and each time Plaintiff claimed that this caused pain in his lower back. Defendant's examination of Plaintiff found tenderness at the L4-5 level of his back, good strength, and the ability to walk well. Defendant diagnosed chronic lower back pain in conjunction with disc degeneration, and he decreased Plaintiff's morphine dosage from 30 mg. twice a day to 15 mg. twice a day and switched the morphine to instant release.

Defendant noted that a further evaluation would be made at the next visit to determine Plaintiff's continuing need for morphine, and a follow-up visit in two months was ordered. Plaintiff and Defendant did not discuss surgery on June 3, 2010, but Plaintiff asked about obtaining a second mattress.

The medical treatment provided to Plaintiff by Defendant was reviewed on Defendant's behalf by Harold Jackson, M.D., who is employed by the Permanente Medical Group as a staff orthopaedic surgeon. Dr. Jackson stated that it is desirable to minimize the use of narcotics for chronic pain, and a known potential side effect of narcotics when used for chronic pain is the development of tolerance, requiring higher and higher doses to achieve the same effect. Dr. Jackson concluded that Defendant's change to Plaintiff's narcotic prescription for chronic back pain was a reasonable therapeutic decision and was consistent with appropriate medical practice.

After his examination by Defendant on June 3, 2010, Plaintiff submitted no fewer than six more sick-call slips in which he complained about his pain medications and stated that they needed to be increased.

Plaintiff was seen by a different member of the medical staff on June 21, 2010, and that staff member noted during the examination that Defendant had reduced Plaintiff's morphine to 15 mg. twice a day. Plaintiff's morphine prescription was kept at 15 mg. twice a day but Plaintiff was taken off of the instant release form and he was referred to physical therapy.

Plaintiff then submitted an inmate appeal complaining about the decreased dosage of morphine. Because of the appeal, Plaintiff was seen again by Defendant on August 21, 2010. Plaintiff stated that he wanted to see a doctor and he did not want to be seen by Defendant ever again. Plaintiff also said that he wanted his morphine increased to 30 mg. Plaintiff acknowledged a history of substance abuse, including meth, heroin, PCP and LSD. The examination found no

apparent distress and Plaintiff was again diagnosed with degenerative disc disease. It was Defendant's opinion that there was no indication for an increase in morphine and that Plaintiff's need for morphine was questionable. Defendant also noted that another medical provider had seen Plaintiff since Defendant reduced his morphine dosage on June 3, 2010, and that provider similarly concluded that Plaintiff should be prescribed 15 mg. of morphine twice a day. Defendant denied Plaintiff's inmate appeal regarding his morphine prescription, and that was the last time that Defendant examined Plaintiff regarding his back.

Because of Plaintiff's inmate appeal, he was seen by the case review appeal committee on August 26, 2010. An examination of Plaintiff found that he moved freely, that he could sit and get up from a chair without any problem, and that he could turn around completely without difficulty.

The committee noted that Plaintiff had a history of chronic lower back pain secondary to degenerative disc disease. The committee further noted that Plaintiff had been seen at UC Davis in March 2008 and, although surgery had been recommended at that time, the committee was not recommending surgery because it might not be of great benefit at that time given that Plaintiff's mobility was not jeopardized. However, if Plaintiff wanted to pursue surgery in the future, he would be referred to a neurosurgeon. The committee recommended that Plaintiff's morphine prescription be changed from 15 mg. twice a day, extended release, to 15 mg. three times a day, immediate release.

Plaintiff was subsequently seen by a doctor on August 31, 2010, and he reported that his pain was controlled.

### B. Eighth Amendment Standard

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and

wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Wilhelm*, 680 F.3d at 1122-23 (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

### C.     Findings

As an initial matter, Plaintiff's chronic back pain, caused by degenerative disc disease, constituted an objectively serious medical need and Defendant does not argue to the contrary. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). Plaintiff's condition was one that a reasonable doctor would find important and worthy of comment or treatment and, viewing the evidence in the light most favorable to Plaintiff, his condition resulted in chronic pain. *Lopez*, 203 F.3d at 1131. Although Defendant devotes a portion of his motion for summary judgment to arguing the level of seriousness, the critical inquiry here is whether Defendant acted with subjective deliberate indifference to Plaintiff's painful back condition, not whether Plaintiff's condition rose to the level of objectively serious medical need.

Turning to the subjective element of deliberate indifference, Defendant has submitted evidence that the reduction in Plaintiff's morphine dosage on June 3, 2010, was reasonable given the physical examination of Plaintiff and Plaintiff's physical abilities at the time, and that the

reduction consistent with appropriate medical practice, which includes the desire to minimize reliance on narcotics for chronic pain. Furthermore, on June 21, 2010, another medical provider maintained the morphine dosage prescribed by Defendant on June 3, 2010. Although the case review appeal committee subsequently increased Plaintiff's morphine dosage from two times a day to three times a day on August 26, 2010, neither that increase nor the various shifts back and forth between extended and immediate release forms of the medication demonstrate the existence of any material factual disputes with respect to the propriety of Defendant's decision to reduce Plaintiff's morphine dosage on June 3, 2010. Plaintiff is required to produce admissible evidence that course of treatment prescribed by Defendant on June 3, 2010, was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to Plaintiff's health. *Snow*, 681 F.3d at 988 (quotation marks and citation omitted). Plaintiff has not done so.[4]

Plaintiff has submitted evidence that on June 3, 2010, Defendant asked why Plaintiff was on morphine, said he was not going to let inmates intimidate him into giving them what they thought they should have, and said Plaintiff should be on just aspirin.[5] (Doc. 158, Opp., Sotelo Depo. Tx., court record p. 102:11-18.) However, even assuming Defendant believed that inmates routinely manipulated or intimidated prison medical providers into prescribing unnecessary medication and Defendant was determined not to be one of those providers, Defendant did not replace Plaintiff's morphine prescription with mere aspirin and his statements do not create a dispute with respect to the expert evidence that the reduction in Plaintiff's morphine prescription was medically acceptable under the circumstances.

---

[4] Plaintiff's lay opinion on the propriety of the medical treatment he received is not admissible, and Plaintiff did not submit any expert opinions controverting those of Defendant and Dr. Jackson.

[5] Plaintiff also cites to his motion seeking preliminary injunctive relief, filed on July 15, 2010, in support of his position that Defendant stated all Plaintiff needed was aspirin, Plaintiff was only given morphine because other doctors were weak, and he was not weak or afraid to cut Plaintiff's medication in half or eliminate it altogether. (Doc. 30.) The motion was signed under penalty of perjury and it would be entitled to treatment as an opposing affidavit, along with the second amended complaint, if Plaintiff was proceeding pro se. *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004). However, Plaintiff has counsel and his opposition is not supported by either a declaration attesting to those facts or deposition testimony. Even if the Court had been able to consider the evidence, though, it, like the other statements attributed to Defendant, does not suffice to create a triable issue of fact.

Finally, with respect to Plaintiff's request for a second mattress on June 3, 2010, Defendant has submitted evidence that an extra mattress would not have relieved Plaintiff's back pain and Plaintiff did not meet the prison's medical criteria for obtainment of a second mattress. (Doc. 153-3, Motion, Green Dec., ¶9.)  Plaintiff submits no evidence refuting those facts.[6]

Accordingly, in the absence of any admissible evidence that the course of treatment chosen by Defendant on June 3, 2010, was medically unacceptable, Plaintiff's mere disagreement with the reduction in his morphine dosage and the decision not to provide him with a second mattress does not suffice to create any triable issues of fact.  Defendant is entitled to summary judgment on the Eighth Amendment claim against him.

## IV. Conclusion and Order

This case involves Plaintiff's disagreement with Defendant's decision to reduce his morphine dosage and with Defendant's failure to provide him with the second mattress he requested.  Plaintiff has not submitted any admissible evidence that the course of treatment chosen by Defendant on June 3, 2010, was medically unacceptable under the circumstances and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health.  *Snow*, 681 F.3d at 988 (quotation marks and citation omitted.  Therefore, Defendant is entitled to judgment as a matter of law on the claim against him, and the Court does not reach Defendant's alternate argument that he is entitled to qualified immunity.

Accordingly, Defendant's motion for summary judgment, filed on April 23, 2014, is HEREBY ORDERED GRANTED.[7]

IT IS SO ORDERED.

Dated:   **June 2, 2014**                         /s/ Lawrence J. O'Neill
                                                  UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff's unsupported objections to Defendant's statements for lack of foundation and calling for an expert opinion are overruled.  As a licensed physician's assistant who was employed at the prison, the Court can discern no basis for a determination that Defendant is not qualified to render those opinions and Plaintiff provides none.  Fed. R. Evid. 702; *Barthelemy v. Air Line Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (per curiam).

[7] This case shall remain open and entry of judgment shall be deferred pending resolution of Plaintiff's attempt to amend to add a new party.  (Doc. 156.)